IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN C. VERSTRAETE,<br><br>Defendant. | Case No.4:16-CR-00348 GAF |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Jefferson B. Sessions, United States Attorney General, and Sirena Miller Wissler, Special Attorney to the United States Attorney General, and the defendant, JOHN C. VERSTRAETE ("the defendant"), represented by CHRISTOPHER J. ANGLES.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney's Office for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count One and Count Six of the Indictment now charging the defendant with violations of 18 U.S.C. §§ 1347 and 1349, Conspiracy to Commit Healthcare Fraud and; 21 U.S.C. §§ 841(a)(1) and 846, Conspiracy to Distribute a Controlled Substance Outside the Course of Legitimate Medical Practice and Not for a Legitimate Medical Purpose, respectively. In exchange for

defendant's plea of guilty to Count One and Count Six, the government agrees to move to dismiss Count Two, Count Seven, Count Eight, and Count Nine at the time of sentencing.

By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

**Count One – Conspiracy to Commit Healthcare Fraud**

Defendant John C. VERSTRAETE is a Doctor of Osteopathy, duly licensed by the Missouri Board of Healing Arts under license number -----92, and he was also licensed by the Missouri Bureau of Narcotics and Dangerous Drugs under license number ---88. VERSTRAETE was registered as a practitioner with the Drug Enforcement Administration to prescribe, administer, and dispense controlled substances in Schedules II, IIN, III, IIIN, IV, and V under the provisions of 21 U.S.C. §§ 822 and 823, and 21 C.F.R. part 1301. DEA issued VERSTRAETE registration number ------884 at the business address of 3215 Main Street, Unit 100B, Kansas City, Missouri 64111. VERSTRAETE's DEA registration does not authorize him to import controlled substances of any kind.

Defendant VERSTRAETE owned and operated three legal entities at 3215 Main Street, Unit 100B, Kansas City, Missouri 64111. The first was the House of Elan Medical Spa, LLC. The second was the primary medical practice entity, Plaza Physicians Group. The third entity was Mid-America Infectious Disease Consultants, through which Defendant VERSTRAETE conducted some of his activities with HIV and AIDS patients.

Defendant VERSTRAETE prescribed Serostim®[1] to some patients (hereinafter, "HGH

---

1 Serostim® is the branded name of a Human Growth Hormone (HGH) product that has been FDA-approved to treat HIV patients with wasting or cachexia. Serostim® is a prescription drug within the meaning of 21 U.S.C. § 353(b)(1). All HGH products were prescription drugs because of their toxicity or other potentiality for harmful effect, or the method of their use, or the collateral measures necessary to their uses, they were not safe for use except under the supervision of a practitioner licensed by law to administer such drug. The HGH drug products that U.S. Food and Drug Administration ("FDA") approved under 21 U.S.C. § 355 could only be legally prescribed and used under the professional supervision of a practitioner licensed by law to administer prescription drugs. Further, the HGH drug products that FDA approved could only be legally prescribed or used for several specific medical uses. 21 U.S.C. § 353(b)(1)(A) and (B). The FDA has authorized a limited number of medical uses for HGH under 21 U.S.C. § 355, including the following uses in adults with: (1) biochemically documented growth hormone deficiency, diagnosed either in adulthood or previously diagnosed in childhood and reconfirmed as an adult; (2) muscle wasting diseases associated with AIDS; and (3) short bowel

2

patients") who exhibited a legitimate medical need and for one of the therapeutic uses for which HGH is approved for use in humans by the FDA. Defendant VERSTRAETE also prescribed Serostim® to some patients (hereinafter, "fraudulent HGH patients") who exhibited no legitimate medical need for HGH. For these fraudulent HGH patients, VERSTRAETE and/or his co-conspirators made knowingly false representations to representatives of various public and private healthcare benefit plans in order to obtain authorization for payment for this highly expensive drug. Medicare and other health care benefit programs do not knowingly cover payments for HGH or other drugs that obtained or dispensed fraudulently or illegally. Generally, Medicare and other health care benefit programs do not knowingly pay for medically unnecessary drugs or services.

Some HGH patients, including, but not necessarily limited to, seven (7) individuals who subsequently confessed to participating in the scheme, then filled the prescriptions for Serostim® at local pharmacies. Serostim® was typically dispensed in a thirty-day supply of vials. Defendant then submitted or caused to be submitted claims for reimbursement from health care benefit programs that then paid all or some portion of the cost of the Serostim® prescribed. Some HGH patients, including but not limited to seven (7) known individuals who admitted to participating in the scheme, actually administered only a portion of the Serostim® prescribed to them. Instead of using all of the vials dispensed to them, some HGH patients brought the Serostim® vials to defendant VERSTRAETE'S office, whereupon defendants VERSTRAETE, JACKSON, EVEN, and others purchased the Serostim® back from the patients in exchange for cash. These cash payments, made by VERSTRAETE and/or members of his office staff at his direction, were made to the fraudulent HGH patients, who received cash for their unused Serostim®. Payments of cash were recorded on crude ledgers to reflect monies paid, although these records are not complete or capable of complete reconciliation. Defendant's cash payments to patients were typically substantially less than what the health care programs had previously paid for these FDA-approved drugs. These payments typically included the name of the HGH patient, and the amount paid, preceded by a minus symbol.

Defendant VERSTRAETE and others removed the prescription drug labels from the Serostim® and stockpiled the HGH in defendant VERSTRAETE'S office. Defendant VERSTRAETE and his office staff falsely represented to their patients that they were able to offer Serostim® for a price that was cheaper than a pharmacy because they obtained it from Canada. Defendant VERSTRAETE and others re-sold the diverted Serostim® for cash to other patients to be used for purposes other than those lawfully authorized by the FDA under 21 U.S.C. § 355. Defendant's cash receipts from fraudulent HGH patients were typically substantially more than what defendant had previously paid to acquire these FDA-approved

---

syndrome. The FDA had not approved any HGH drug product to prescribe or use for any body-building, anti-aging or longevity, or weight loss medical uses. The FDCA prohibited the knowing distribution of, or the possession with intent to distribute, HGH for any use in humans other than for the treatment of disease or other recognized medical condition where such use has been authorized by the FDA and that was pursuant to the order of a physician. 21 U.S.C. § 333(e).

3

drugs from other patients. Defendant VERSTRAETE did not issue prescriptions when re-selling the Serostim® to fraudulent HGH patients.

The precise dollar amount lost by health care benefit programs or gained by defendant because of the fraud perpetrated by defendant VERSTRAETE and his staff as a result of the "Serostim®" scheme is unknown. However, the parties are in agreement that the total amounts disbursed by Medicare and/or Medicaid (or other private healthcare benefit programs) as to the seven (7) identified fraudulent HGH patients who admitted to participating in the scheme between 2012 and November 2014 for HGH was in excess of $1.5 million. Defendant VERSTRAETE acknowledges that this $1.5 million figure constitutes a reasonable estimate of the actual loss to the victim healthcare benefits programs and agrees to make full restitution in this amount.

## Count Six – Conspiracy to Dispense a Controlled Substance Outside the Scope of Legitimate Medical Practice and Not for a Legitimate Medical Purpose

Between approximately August 2011 and November 2014, defendant VERSTRAETE and members of his office, acting at his direction, acquired supplies of anabolic steroids and maintained those supplies at VERSTRAETE's office. Typically, members of defendant's staff found persons who claimed to be selling anabolic steroids over the Internet, and sent them money in exchange for what the sellers claimed were anabolic steroids. The illegal foreign sellers then shipped what appears to be unapproved anabolic steroids that had been manufactured in foreign unregistered drug facilities to the United States. The substances labeled as anabolic steroids that were acquired by defendant and his staff were therefore different from the FDA-approved anabolic steroid drugs that can be legally prescribed and used in the United States, as FDA never considered new drug applications for these foreign substances or inspected any drug manufacturing facilities where these substances could have been manufactured. The quality or dosage potency of all of the foreign substances acquired by defendant and his staff is unknown. Some of the substances acquired by defendant did contain anabolic steroids, including Trenbolone and Stanozolol, both of which are Schedule III controlled substances.

Thereafter, defendant VERSTRAETE and members of his office staff dispensed those anabolic steroid controlled substances to patients having no legitimate medical need for the same. By obtaining these drugs from illicit sources outside the United States, and by dispensing them despite a lack of medical need and without a valid prescription, defendant VERSTRAETE acted outside the scope of any legitimate medical practice. Records and items of physical evidence seized from VERSTRAETE's office and/or computer reveal that between 2012 and December 2014, VERSTRAETE and/or persons in his employ purchased approximately 25,000 units of Schedule III controlled substances (anabolic steroids), none of which were legally purchased or prescribed.

Defendant acknowledges that while the information set out herein may not allege exact amounts of money and/or controlled substances for which he is accountable by virtue of his own conduct and the conduct of co-conspirators reasonably foreseeable to him, the parties are in agreement that the quantity of Schedule III controlled substances for which defendant

4

VERSTRAETE is accountable under Count III is difficult to calculate with precision. However, based upon the known evidence, including statements of cooperating witnesses, documentary evidence, and seizures of physical evidence, the parties agree that based upon his own conduct and the conduct of co-conspirators reasonably foreseeable to him, defendant VERSTRAETE is accountable for more than 25,000 units of Schedule III anabolic steroids. When converted to marijuana pursuant to the Drug Equivalency Table, these 25,000 units of anabolic steroids are equivalent to 25 kilograms of marijuana, resulting in an agreed-upon base offense level of 16 pursuant to Section 2D1.1(c)(15). However, they will ultimately be bound by the U.S.S.G. drug level determined by the court at the sentencing hearing.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining defendant's guilt, any applicable statutory minimum sentences, and defendant's advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of any of the indictments as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which defendant is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon pleading guilty to the Count One of the Indictment as outlined herein, charging a violation of 18 U.S.C. §§ 1347 and 1349, Conspiracy to Commit Healthcare Fraud, the maximum penalty the Court may impose is 10 years imprisonment and a $250,000.00 fine, with not more than three (3) years of supervised release to follow any term of imprisonment imposed.

The defendant understands that upon pleading guilty to the Count Six of the Indictment as outlined herein, charging a violation of 21 U.S.C. §§ 841(a)(1) and 846, Conspiracy to Dispense a Controlled Substance Outside the Scope of Legitimate Medical Practice and Not for a Legitimate Medical Purpose, the maximum penalty the Court may impose is 20 years imprisonment and a

5

$1,000,000.00 fine, with not less than three (3) years of supervised release to follow any term of imprisonment imposed.

The defendant understands that for each count of conviction the Court shall impose a $100 mandatory special assessment which must be paid in full *prior* to sentencing in this case. Failure to *timely* pay said assessment can result in the Government seeking a continuance of the sentencing until it is paid OR, in the alternative, the Government can consider the failure to timely pay it as a violation of this plea agreement and seek to have this agreement voided.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, and may impose either concurrent sentences or consecutives sentences;

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment as to Count Six, the Court shall impose a term of supervised release of not less than three (3) years;

    d. if the defendant violates a condition of supervised release, the Court may revoke that supervised release and impose an additional period of imprisonment without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release;

    e. the Court may impose any sentence authorized by law, and may impose those sentences concurrently or consecutively, and may impose a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f. any sentence of imprisonment imposed by the Court will not allow for parole;

    g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines

range offered by the parties or the United States Probation Office;

      h. the defendant may not withdraw this guilty plea solely because of the nature or length of any sentence imposed by the Court;

    **7. <u>Government's Agreements</u>.** Based upon evidence in its possession at this time, the United States agrees, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the charges defendant has pled to herein for which it has venue and which arose out of the defendant's conduct described above.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement and the limitations set out herein. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives any right to challenge the initiation of the dismissed or additional charges against defendant if defendant breaches this agreement. The defendant expressly waives any right to assert a statute of limitations defense if the dismissed or additional charges are initiated against defendant following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against defendant following breach of this plea agreement, defendant will not be allowed to withdraw this guilty plea.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence, or a conspiracy to commit any such acts of violence. Further, the defendant understands that this agreement does not foreclose prosecution of any criminal activity of which the United States has no knowledge. The defendant understands and agrees that if the Government files additional charges against defendant for one of these exceptions, defendant will not be allowed to withdraw

this guilty plea.

      **8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of defendant's criminal activities. The defendant understands these disclosures are not limited to the counts to which defendant has pleaded guilty.

      The United States may respond to comments made or positions taken by the defendant, defendant's counsel or anyone on defendant's behalf and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

      **9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may only withdraw these pleas of guilty if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts defendant's pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, that will not permit defendant to withdraw these pleas of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range and may impose that sentence concurrently or consecutively;

    b. As to Count One, the applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.1, which provides for a *not less than* a base offense level 6. The parties further agree that because the amount of the loss exceeded $1,500,000, sixteen (16) levels should be added pursuant to Section 2B1.1(b)(1)(I). In addition, because the parties agree that defendant was convicted of a Federal health care offense involving a Government health care program and the loss to the Government health care program was more than $1,000,000.00, the base offense level should be further increased by two (2) levels pursuant to Section 2B1.1(b)(7). Lastly, the parties agree that pursuant to Section 3B1.3, two (2) levels should be added because defendant abused a position of public or private trust, and used a special skill in a manner that significantly facilitated the commission of the of offense. As a result, defendant's adjusted Offense Level as to Count One shall be *not less than* level 28;

    c. As to Count Six, the applicable Guidelines section for the offense of conviction is U.S.S.G. § 2D1.1, which provides for *not less than* a base offense level 16. The parties agree that pursuant to Section 3B1.3, two (2) levels should be added because defendant abused a position of public or private trust, and used a special skill in a manner that significantly facilitated the commission of the of offense. As a result, the defendant's adjusted Offense Level at to Count Six shall be *not less than* level 18.

    d. The parties agree to recommend that defendant is eligible for the "safety valve" as defined by Section 5C1.2, subject to the Probation Office's investigation of his criminal history. The parties are in agreement that the defendant did not use violence or any credible threat of violence or possess a firearm or any other dangerous weapon; the parties are in agreement that the offense did not result in death or serious bodily injury; the parties are in agreement that the defendant was not an organizer, leader, manager, or supervisor of others in the offense, and; the parties are in agreement that the defendant has truthfully provided the Government all information he has concerning the offense.

    e. While the parties recognize there might be additional specific aggravating or mitigating U.S.S.G. applications applicable to this defendant, the parties elect to address at the sentencing hearing any such additional adjustments found by the pre-sentence report or Court and agree to be bound by the Court's determination following the sentencing hearing;

9

f. The defendant appears to have admitted his guilt and accepted responsibility for his actions, and by timely notifying authorities of the intention to enter a plea of guilty has thereby permitted the Government to avoid preparing for trial and permitted the Government and the Court to allocate their resources efficiently. Therefore, the defendant appears entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines and the Government, at the time of sentencing, will make a motion with the Court to that effect unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and any pretrial release orders; or (2) attempts to withdraw this guilty plea; or (3) violates the law; or (4) otherwise engages in conduct inconsistent with an acceptance of responsibility;

g. There is no agreement between the parties regarding the defendant's criminal history category, including whether said criminal history or lack of criminal history otherwise affects the ultimate guideline or statutory sentence. The parties agree that the Court will determine the applicable criminal history category, and any statutory or guideline sentence increase or decrease as a result thereof, after receipt of the presentence investigation report prepared by the United States Probation Office;

h. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw this plea of guilty;

i. The parties agree to seek a sentence within the ultimately determined Guideline range based on any *good faith* sentencing arguments they care to make and that do not violate any other agreements herein. The sentencing argument agreements by the parties are not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable;"

j. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Criminal Information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including

hearsay; and,

   k. The defendant understands and agrees that the factual admissions contained in Paragraph 3 or other places within this plea agreement, and any admissions made during the defendant's plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

   a. oppose or take issue with any position advanced by defendant, or anyone on behalf of the defendant, at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

   b. comment on the evidence supporting the charges in the Criminal Information;

   c. oppose any arguments and requests for relief the defendant, or anyone on defendant's behalf, might advance on an authorized appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d.  oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that defendant has been advised of, understands, and knowingly and voluntarily waives the following rights:

  a. the right to plead not guilty and to persist in a plea of not guilty;

  b. the right to be presumed innocent until defendant's guilt has been established beyond a reasonable doubt at trial;

  c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

  d. the right to confront and cross-examine the witnesses who testify against the defendant at trial;

  e. the right to compel or subpoena witnesses to appear on defendant's behalf at trial; and

  f. the right to remain silent at trial, in which case that silence may not be used against defendant.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask questions about the offense or offenses to which defendant pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, those answers may later be used against defendant in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

  a. The defendant acknowledges, understands and agrees that by his *unconditional* plea of guilty pursuant to this plea agreement he waives the right to

12

appeal or collaterally attack a finding of guilt *or* denial of a motion to withdraw his guilty pleas following the acceptance of his pleas of guilty pursuant to this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

      b. The defendant expressly waives the right to appeal any sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence, which specifically means a sentence imposed in excess of the statutory maximum. A misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence, is *not* an "illegal sentence" and therefore are *not* appealable. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal the sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

      c. The defendant expressly waives the right to appeal any conviction and/or the Court's acceptance of his plea of guilty, on any ground based upon a challenge to the Constitutionality of any statute forming the basis of any criminal charge made against him.

**16. Financial Obligations.** By entering into this plea agreement, the defendant states an understanding of and agrees to the following financial obligations:

      a. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine or costs.

      b. The defendant will fully and truthfully disclose all assets and property in which defendant has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution or fine or costs order in full.

      c. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

d. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets, restitution, fines, or costs.

e. The defendant hereby authorizes the USAO to obtain a credit report pertaining to defendant to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

f. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of **$200.00** by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of fulfillment of this obligation at the time of sentencing.

g. The defendant certifies that no transfer of assets or property has been made for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that no such transfers will be made in the future.

h. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request**. The defendant waives any and all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees**. The defendant waives any and all claims

14

under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant Will Surrender to Custody at the Plea.** The defendant understands that the crime to which he is pleading in Count Six of the Indictment is a controlled substance offense for which a maximum term of imprisonment of ten years or more is prescribed. Accordingly, pursuant to 18 U.S.C. § 3143(a)(2), the Court shall detain the defendant after he pleads guilty to the offense. Should defendant present sufficient facts upon which the Court could find that immediate detention is not required, the government shall take no position on the propriety (or lack thereof) of self-surrender.

20. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty.

The defendant also understands and agrees that in the event this plea agreement is violated, all statements made by the defendant to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by defendant before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against defendant in any and all criminal proceedings. The defendant waives any and all rights under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any

statements made by defendant subsequent to this plea agreement.

21. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorney or any other party to induce him to enter this plea of guilty.

22. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party. Nothing contained herein limits the rights and authority of the United States or any State to take any civil, tax, licensing, or administrative action against the defendant, including program exclusion, debarment, license revocation, or de-listing.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

16

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

JEFFERSON B. SESSIONS
United States Attorney General

Dated: 4/25, 2018

/s/ Sirena Miller Wissler
Sirena Miller Wissler
Special Attorney to the United States Attorney General

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Criminal Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines and any statutory minimums. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated:          , 2018

/s/
JOHN C. VERSTRAETE
Defendant

I am the attorney for defendant JOHN C. VERSTRAETE I have fully explained to him all his rights with respect to the offenses charged in the Criminal Information. Further, I have reviewed with him the provisions of the Sentencing Guidelines and any statutory minimum sentences which might apply in this case. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge and belief, the decision by JOHN VERSTRAETE to enter into this plea agreement is an informed and voluntary one.

Dated: 4/25, 2018

/s/
CHRISTOPHER J. ANGLES
Attorney for Defendant

17